UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN DENISE MARTIN,<br><br>         Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No.: 3:16-cv-03017-H-BGS<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; and**<br><br>**[Doc. Nos. 13, 14]**<br><br>**(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 19]** |

  On December 13, 2016, Karen Denise Martin ("Plaintiff") filed a complaint against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Defendant"), seeking judicial review of an administrative denial of disability benefits under the Social Security Act. (Doc. No. 1.) On February 27, 2017, Defendant filed an answer to Plaintiff's complaint along with the administrative record. (Doc. Nos. 9, 10.) On April 11, 2017, Plaintiff filed a motion for summary judgment, requesting that the Court reverse the Commissioner's final decision and remand the case for further administrative proceedings.

(Doc. No. 14.) On June 15, 2017, Defendant filed a cross-motion for summary judgment and a response in opposition to Plaintiff's motion, requesting that the Court affirm the Commissioner's final decision. (Doc. Nos. 19, 20.) For the reasons below, the Court denies Plaintiff's motion for summary judgment, grants Defendant's cross-motion for summary judgment, and affirms the Commissioner's final decision.

## **BACKGROUND**

On June 21, 2013, Plaintiff applied for disability insurance benefits, claiming a disability onset date of August 18, 2009. (AR 170-80, 196.) Plaintiff is a 51-year-old woman who complains of neuropathy, diabetes, high blood pressure, gout, acid reflex, depression, and arthritis in her left foot, knees, and right shoulder. The Social Security Administration ("SSA") initially denied Plaintiff's application for benefits on September 12, 2013, and denied reconsideration on February 11, 2014. (AR 116-20, 125-31.)

On May 7, 2015, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"). (AR 28.) Plaintiff testified at the hearing, as did a vocational expert retained by the SSA. (Id.) Plaintiff also submitted as evidence her medical records, RFC questionnaires from her treating physician and nurse, the initial disability determination and reconsideration by the state agency physician, and her work and education history. (Id.) In both the initial disability determination and the reconsideration, the state agency physician found that the Plaintiff was not disable. (AR 101, 113.)

Social Security regulations require ALJs to use the following five-step inquiry in determining whether an applicant qualifies for disability benefits: (1) has the claimant been gainfully employed since the time of the disability onset date? (2) "is the claimant's impairment severe?" (3) "does the impairment 'meet or equal' one of a list of specific impairments described in the regulations," and if not, what is the claimant's residual

functional capacity ("RFC")[1]? (4) is the claimant capable of performing past relevant work? and (5) "is the claimant able to do any other work?" Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); see also 20 C.F.R. §§ 404.1520, 416.920. In a decision dated July 8, 2015, the ALJ analyzed Plaintiff's claim under this test and determined that she had not met her burden of proof. (AR 28-53.) At the first step, the ALJ determined that the Plaintiff had not been gainfully employed since the disability onset date of August 18, 2009. (AR 30-31.) At the second step, the ALJ determined that Plaintiff had the following severe impairments: gout, Morton's neuroma, neuropathy in her feet and ankles, obesity, diabetes, hypertension, and shoulder pain. (AR 31-33.)

At the third step, the ALJ concluded that Plaintiff did not have an ailment or combination of ailments that amounted to one of the SSA's recognized list of impairments. (AR 33-34.) The ALJ then determined that Plaintiff had an RFC to perform light work, "except that the claimant can stand/walk a total of two hours out of an eight hour day." (AR 34.) The ALJ further found that Plaintiff:

> cannot walk on uneven ground, climb ladders, work at unprotected heights or around dangerous machinery, or be exposed to temperature extremes. The claimant can only occasionally climb ramps or stairs, stoop, or bend. Moreover, the claimant can only occasionally lift above shoulder level with the dominant (right) upper extremity. As to the dominant upper extremity only, she is further restricted to frequent fingering and frequent handling.

(AR 34.)

At the fourth step, the ALJ determined that Plaintiff could not perform past relevant work as a medical assistant, groundskeeper, assembler, or home health aide. (AR 50-51.)

At the fifth step, based on the RFC assessment and Plaintiff's age, education, and past relevant work experience, the ALJ determined that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in

---

[1] Social Security regulations define residual function capacity as "the most you can still do despite your limitations." 20 C.F.R. § 416.946(a)(1).

significant numbers in the national economy." (AR 52.) Consequently, the ALJ determined that Plaintiff had not been disabled from August 18, 2009, the alleged onset date, through July 8, 2015. (AR 31.)

On October 18, 2016, the Social Security Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (AR 1-7.)

# **DISCUSSION**

**I.     Relevant Legal Standards**

    A.     SSA's Sequential Five-Step Process.

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. To qualify for disability benefits under the Act, a claimant must establish that: (1) he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," 42 U.S.C. § 423(d)(1)(A); (2) his or her impairment persisted at least longer than a twelve month period, id.; see also 20 C.F.R. § 404.1509; and (3) he or she "either was permanently disabled or subject to a condition which became so severe as to create a disability prior to the date upon which [his or] her disability insured status expired." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also 42 U.S.C. § 423(a)(1)(A).

The first step in the sequential evaluation considers a claimant's "work activity, if any." 20 C.F.R. § 404.1520(a)(4)(i). An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity." Id. §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to the second step to ascertain whether the claimant has a medically severe impairment or combination of impairments. The so-called "severity regulation" dictates the course of this analysis. Id. §§ 404.1520(c), 416.920(c); see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

An ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do "basic work activities."

20 C.F.R. § 404.1520(c). The ability to do "basic work activities" means "the abilities and aptitudes necessary to do most jobs." Id. §§ 404.1521(b), 416.921(b).

If the impairment is severe, the evaluation proceeds to the third step. At this step, the ALJ determines whether the impairment is equivalent to one of several listed impairments that the SSA acknowledges are so severe as to preclude substantial gainful activity. Id. §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant is disabled so long as the impairment meets or equals one of the listed impairments. Id. §§ 404.1520(d).

If the ALJ determines that a claimant does not suffer from one of the SSA's recognized severe ailments, the ALJ must establish the claimant's Residual Functional Capacity ("RFC") before proceeding to the fourth step of the inquiry. Id. §§ 404.1520(e), 404.1545(a). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. Id. §§ 404.945(a)(1), 404.1545(a)(1). The RFC analysis considers "whether [the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." Id. §§ 404.1545(a)(1), 416.945(a)(1). In establishing a claimant's RFC, the ALJ must assess relevant medical and other evidence, as well as consider all of the claimant's impairments, including impairments categorized as non-severe. Id. § 404.1545(a)(3), (e).

At the fourth step, the ALJ uses the claimant's RFC to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. Id. § 404.1520(f). So long as a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. Id. §§ 404.1560(b)(3). Conversely, if the claimant either cannot or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's evaluation, the ALJ must verify whether the claimant is able to do any other work in light of his or her RFC, age, education, and work experience. Id. § 404.1520(g). If the claimant is able to do other work, the claimant is not disabled. However, if the claimant is not able to do other work and meets the duration

requirement, the claimant is disabled. Id. Although the claimant generally continues to have the burden of proving disability at step five, a limited burden shifts to the SSA. At this stage, the SSA must present evidence demonstrating that other jobs that the claimant can perform—allowing for his RFC, age, education, and work experience—exist in significant numbers in the national economy. Id. §§ 404.1520, 1560(c), 416.920, 404.1512(f).

B.   Standard of Review.

Unsuccessful applicants for social security disability benefits may seek judicial review of a Commissioner's final decision in a federal district court. See 42 U.S.C. § 405(g). "As with other agency decisions, federal court review of social security determinations is limited." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

"An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusions. Garrison, 759 F.3d at 1009. "'Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's.'" Bray, 554 F.3d at 1222 (quoting Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Garrison, 759 F.3d at 1010 (quoting Shalala, 53 F.3d at 1039).

Further, even when the ALJ commits legal error, a reviewing court will uphold the decision if that error is harmless. Treichler, 775 F.3d at 1099; see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error

principles apply in the Social Security Act context."). "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Molina, 674 F.3d at 1115. "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" Id. at 1111 (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

**III. Analysis**

Plaintiff moves for summary judgment on the following grounds: (1) the ALJ's RFC determination is not supported by substantial evidence, and (2) the ALJ erred by failing to develop the record. (Doc. No. 14.) Conversely, Defendant moves for summary judgment on the grounds that the ALJ's RFC was supported by substantial evidence, and there was no legal error. The Court addresses each of these arguments in turn. (Doc. No. 19.)

A. <u>The ALJ's RFC Assessment Was Based on Substantial Evidence.</u>

Plaintiff claims that the ALJ's decision was not based on substantial evidence for two reasons: (1) the ALJ improperly evaluated the medical opinions of Dr. Fredrick Thomas and Nurse Helen Lai and (2) the ALJ incorrectly found that Plaintiff's testimony was not credible. (Doc. No. 14.)

1. <u>The ALJ Properly Evaluated the Medical Opinions.</u>

In determining Plaintiff's RFC, the ALJ must evaluate all medical opinions that it receives. 20 C.F.R. § 404.1527(c). Generally, the ALJ gives more weight to opinions from treating sources. Id. §§ 404.1527(c)(1)-(2). If the treating source's opinion is well supported "by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other evidence in the record, then the opinion is given controlling weight. Id. § 404.1527(c)(2). Deference to treating physicians is appropriate because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." Id.

The ALJ may choose not to give a treating physician's opinion controlling weight when the opinion is inconsistent with other substantial evidence in the record. See id. "'If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983))

The ALJ considered all of the evidence and issued a detailed twenty-five page opinion explaining his decision. Specifically, the ALJ provided the following reasons for affording Dr. Thomas's opinion little weight: the opinion was both unsupported by treatment records, and it was inconsistent with the medical record as a whole. (AR 47.) The ALJ arrived at this conclusion because Dr. Thomas's records did not contain physical examinations, reported side effects of medication, reported issues with pain, and a detailed explanation for Dr. Thomas's assessment RFC. (Id.) Based on this lack of evidence and his assessment of plaintiff's lack of credibility, the ALJ concluded that Dr. Thomas's opinion was founded on Plaintiff's subjective allegations rather than on objective medical evidence. He thus assigned Dr. Thomas's opinion little weight under 20 C.F.R. § 404.1527(c). (Id.)

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002). Here, the ALJ correctly discounted the weight of Dr. Thomas's opinion because it was conclusory and inadequately supported by medical evidence. (AR. 46.) First, Dr. Thomas's RFC questionnaire contains no explanation to justify his medical opinion as to the extent of Plaintiff's functional capacity. (AR 467-70.) Second, none of the physical examinations that Dr. Thomas conducted contain any objective medical evidence of impairments that would justify the conclusions Dr. Thomas reached in his RFC questionnaire. (AR 47, 347-49, 369-70, 389-90, 401-02, 468-69.) Moreover, there are no physical examinations from other medical examiners that support Dr. Thomas's opinion. (AR 345, 358, 362, 365,

371-372, 393, 404-05, 429, 461.) Thus, the ALJ provided a specific, legitimate reason for assigning little weight to Dr. Thomas's medical opinion.

Similarly, the ALJ assigned little weight to Nurse Lai's opinion for the same reasons he gave in assigning little weight to Dr. Thomas's opinion. The opinion was both unsupported by treatment records, and it was inconsistent with the medical record as a whole. (AR 48-49.) The ALJ arrived at this conclusion because Nurse Lai's opinion was internally inconsistent, lacked physical examinations that supported her findings, did not contain a detailed explanation of her findings, and contradicted Dr. Thomas's opinion. (Id.) Just like Dr. Thomas's opinion, the ALJ determined that these factors warranted assigning little weight to Nurse Lai's opinion. (Id.)

Internal inconsistencies within a medical opinion constitutes a legitimate basis for rejecting the opinion. See Morgan v. Comm'r, 169 F. 3d 595, 603 (9th Cir. 1999). Here, the ALJ correctly discounted the weight of Nurse Lai's opinion because it was inconsistent. (AR 48-49.) First, Nurse Lai's RFC determination is inconsistent with Dr. Thomas's opinion regarding "whether or not the claimant requires manipulative limitations or breaks in excess of typical breaks to lie down or recline." (AR 48-49, 337-39, 467-70.) Second, Nurse Lai's report indicates that she previously opined that she was unsure if the claimant could perform work before changing her response. (AR 339.) Finally, Nurse Lai's opinion is inconsistent with the physical examinations conducted at Central Neighborhood Health Foundation that present the Plaintiff as "having normal findings." (Ar. 48.) This substantial evidence supports the ALJ's determination that Nurse Lai's opinion was inconsistent. Thus, the ALJ provided a specific, legitimate reason for assigning little weight to Nurse Lai's medical opinion.

### 2. The ALJ Correctly Found that Plaintiff Was Not Credible.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). To permit meaningful judicial review of the credibility determination, the ALJ must "specify which testimony

[he] finds not credible, and then provide clear and convincing reasons supported by evidence in the record to support that credibility determination." Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must initially determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id.

> When an [ALJ] determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [he or] she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.

Brown-Hunter, 806 F.3d at 488-89. The ALJ may consider the factors listed in Social Security Ruling 88-13, which include:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.

Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

Further, even if one or more of the reasons that the ALJ lists are invalid, as long as the ALJ provides some valid reasons, the ALJ's credibility determination will be upheld. Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1162 (9th Cir. 2008) (stating that an ALJ's citation to erroneous reasons is harmless if the "ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record[]").

As an initial matter, the ALJ found that the gout, Morton's neuroma, neuropathy in her feet and ankles, obesity, diabetes, hypertension, and shoulder pain were medically-

determinable severe impairments supported by the medical evidence. (AR 35.) Thus, with respect to these impairments, Plaintiff met her burden to show that she qualified for severe ailments, and the Record supports the ALJ's finding.

Having found that Plaintiff qualified for some impairments, the ALJ then considered the credibility of Plaintiff's testimony about the severity of the impairments and their impact on her ability to perform any type of work. (AR. 36-43.) At that step, the ALJ properly doubted Plaintiff's credibility about the severity of her symptoms and their life-limiting consequences. (AR. 36.)

Here, the ALJ found that Plaintiff's degree or intensity of her symptoms was inconsistent with the rest of her testimony and the record. (AR 36.) The ALJ reached this conclusion based upon evidence that Plaintiff was working as a caregiver and gaps in the plaintiff's treatment. (AR 36.) In enumerating these factors as the basis for his decision, the ALJ cited specific, clear, and convincing reasons for partially discounting Plaintiff's credibility and testimony, and his consideration of these factors was proper.

First, the ALJ can consider a claimant's daily activities and work record in assessing credibility. See Burch, 400 F.3d at 680; see also C.F.R. § 404.1529(a), (c) (in assessing credibility, the agency considers a claimant's efforts to work and "information about [a claimant's] prior work history"). Here, Plaintiff testified that she worked as a caregiver for her son-in-law part time. (AR 70-71.) Among other things, Plaintiff testified that she did laundry and cooked for her son-in-law. (Id.) Although these activities do not amount to the level of substantially gainful employment, they do indicate that Plaintiff is capable of working. (AR 36.) This does not comport with Plaintiff's testimony that she is incapable of working due to her medical conditions. (AR 72-74.)

Second, the ALJ can consider "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" in assessing credibility. Tommasetti v. Astru, 533 F.3d 1035, 1039 (9th Cir. 2009); see also Burch, 400 F.3d at 680 (treatment history is a factor that can be used for determining credibility); 20 C.F.R. § 404.1520(b) ("If you do not follow the prescribed treatment without a good reason, we

will not find you disabled . . . .") Here, the ALJ cites numerous gaps in treatment occurring intermittently throughout Plaintiff's medical history from 2013 to 2015. (AR 36, 38-40, 42, 306, 324-28, 341, 484-86, 401-02, 454-55, 483-83, 492.) Most recently, Plaintiff failed to attend physical therapy from December 2014 to March 2015, despite Dr. Galloni's recommendation for physical therapy. (AR 378-80, 454-55, 489-90.)

In sum, the ALJ articulated specific reasons for his credibility determination. (AR 36.) Those reasons were clear, convincing and find support from substantial evidence in the record. Accordingly, the ALJ's credibility finding was not erroneous. Carmickle, 533 F.3d at 1162-63.

### B. The ALJ Adequately Developed the Record.

Plaintiff next claims that the ALJ erred by failing to adequately develop the record. (Doc. No. 14 at 15.) Claimants are responsible for providing all evidence used to determine the RFC. 20 C.F.R. § 404.1512(a). Correspondingly, the ALJ has the responsibility of developing a complete medical history, for at least twelve months preceding the month in which claimants filed their applications, and making a reasonable effort to help obtain medical records. 20 C.F.R. § 404.1512(b)(1). "Every reasonable effort means that [the ALJ] will make an initial request for evidence from [the claimant's] medical source . . . [and] if the evidence has not been received, [the ALJ] will make one follow up request." 20 C.F.R. § 416.912(b)(1)(i). The "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (quoting Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001)).

Here, the ALJ adequately developed the record. Although the ALJ has a responsibility to develop the record, Plaintiff has the initial burden of providing the evidence necessary for the evaluation. 20 C.F.R. § 404.1512(a), (b). Only after that initial burden is satisfied does the ALJ have a duty to develop the record, and the duty only arises in cases where the evidence is either ambiguous or inadequate to evaluate Plaintiff's RFC. See McLeod, 640 F.3d at 885. Here, the medical record is extensive, consisting of

numerous doctors' visits and medical examinations spanning more than five years. Here, Plaintiff's most recent medical records provide a complete and unambiguous overview of Plaintiff's current medical condition, including up to date X-rays and MRIs. The record is also detailed and unambiguous regarding the extent of Plaintiff's medical conditions. Thus, the ALJ did not have a duty to develop the record further.

## Conclusion

The Court concludes that the ALJ's decision was supported by substantial evidence. Therefore, the Court grants the Defendant's motion for summary judgment and denies the Plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: October 26, 2017

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT